# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | Michael T. Mason |
|---|---|---|---|
| **CASE NUMBER** | 02 CR 464 - 6 | **DATE** | 6/14/2004 |
| **CASE TITLE** | United States vs. Charles States | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Report and Recommendation is hereby submitted to Judge Guzman recommending the District Court DENY defendant Charles States' motion to suppress post-arrest statements [294-1]. Failure to file objections with the District Court within the specified time will result in a waiver of the right to appeal all findings, factual and legal, made by this Court in the report and recommendation. *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995). All matters relating to the referral of this case having been resolved, the referral is closed and the case is returned to the assigned judge.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUN 15 2004 | |
| | Notified counsel by telephone. | | date docketed | 319 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| ✓ | Copy to judge/magistrate judge. | | | |
| | KF courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 02 CR 464-6 |
| ) | |
| CHARLES STATES ) | Hon. Ronald A. Guzman |
| ) | Magistrate Judge Michael T. Mason |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

DOCKETED
JUN 1 5 2004

The District Court has referred defendant Charles States' ("States") motion to suppress to this Court for an evidentiary hearing and a Report and Recommendation. States seeks to suppress all statements he made to law enforcement officers following his arrest on October 9, 2002, arguing that they were made in violation of his right against compelled self-incrimination under the Fifth Amendment of the Constitution. We conducted an evidentiary hearing on June 3, 2004. After carefully considering the sworn testimony of Officer John Cruz, Officer Steve Flores, Detective Brian Johnson, Detective Rich Sullivan, Officer John Graham, Agent Richard Hardgrave and defendant Charles States; the documents entered into evidence by the government[1]; and the

---

[1] Exhibit 1 is an Arrest Warrant for States issued by this Court on May 7, 2002; Exhibit 2 is the Interrogation - Advice of Rights form signed by States; Exhibit 3 is a Waiver Concerning Time of Initial Appearance signed by States; Exhibit 4 is the Government's Statement Regarding Agent Hardgrave; Exhibit 5 is a Chicago Police Department Event Query from October 9, 2002; Exhibit 6 is the Verified Amended Motion of Defendant States to Suppress, as orally amended at our June 3, 2004 hearing. Defendant States did not enter any exhibits into evidence at the hearing.

319

written submissions by both parties, we make the following findings of fact and conclusions of law. For the reasons set forth below, this Court respectfully recommends that the District Court DENY States' motion to suppress.

**Findings of Fact**

In May, 2002, States was charged, pursuant to a criminal complaint, with participation in a drug conspiracy. The complaint alleged that as part of the conspiracy, States participated in numerous kidnapings in which some victims were severely beaten. That month, this Court issued an arrest warrant for States in connection with the charges in the complaint. Around 12:30 a.m. on October 9, 2002, based on information from an informant, Federal Bureau of Investigation ("FBI") agents and Chicago Police Department ("CPD") officers went to a multi-unit apartment building at 1246[2] E. 79th Street to execute the arrest warrant for States. Two FBI agents and three CPD officers ("Arresting Authorities") entered the apartment building and proceeded to apartment #307 on the third floor, where they believed States was located.

At that time States and a female, Felicia Waller, were inside apartment #307. When the Arresting Authorities reached the apartment, they repeatedly knocked on the door and announced that they were law enforcement officers. After not receiving a response, Officer Graham proceeded to strike the door with a sledgehammer. Upon hearing a "loud boom, boom, boom, at the door," States retrieved two semi-automatic pistols from the bedroom and began firing them at the door and in the direction of the

---

[2]The government's supplemental response lists the address of the apartment building as 1246 E. 79th Street, while the States' amended motion lists the address as 1248 E. 79th Street. The exact address is not material to this opinion, and both parties agree that they are referring to the same apartment building, regardless of the exact address.

2

Arresting Authorities, eventually shooting Officer Graham in the finger. In an attempt to protect themselves and to suppress States' gunfire, the Arresting Authorities returned fire through the door and into the apartment. At that time, the door to the apartment had not been breached.

During the crossfire, States heard shouts of "FBI" and ceased his gunfire. Then, States threw the two semi-automatic pistols he had been firing out of an apartment window and tried to open the door, but it was jammed. Once the gunfire subsided, the Arresting Authorities kicked in the door and ordered States to get on the ground with his hands up and to crawl out of the apartment. Thereafter, States was frisked, handcuffed, arrested and placed in the backseat of a CPD patrol car assigned to Officers Cruz and Flores.[3] Officers Cruz and Flores were instructed to monitor States at the scene and to drive him to the Area 2 police station, located on 111th Street in Chicago.

States remained in the patrol car at the scene for over an hour. During that time, he was asked for his name, social security number, and date of birth in order to run an identity check, but was not questioned further by any law enforcement officers.[4] In fact,

---

[3]States testified that while he was handcuffed on the ground, either inside or just outside apartment #307, Officer Graham and another officer kicked him in the head and side. Officer Graham testified that neither he, nor any other officer, kicked States. We find Officer Graham's testimony credible and States' testimony not credible.

[4]States testified that while in the backseat of the patrol car, he was approached twice by law enforcement officers. The first time the officer asked States questions about his identity. The second time, States testified that the officer asked him questions about the shooting. According to States, he told the second officer that he did not want to talk to him. States did not elaborate on the nature, quantity, or tone of the alleged questions. He also failed to provide an example of an alleged question. However, States did testify that the second officer stopped questioning him and walked away when States said that he did not want to talk. States did not know the name of the second officer, but provided a general description of him. Officer Cruz testified that he was with States the entire time States was in the patrol car, and that no one approached States to question him during that time, apart from limited questions about his

3

Officers Cruz and Flores were specifically told by their supervisor, Sergeant Blysko, to make sure that no one talked to States. Both officers testified that they successfully executed Sergeant Blysko's orders and we find their testimony credible. Before States was transported to the Area 2 police station, he was also given a gun shot residue test, but again was not subjected to any questioning by law enforcement officers. Officers Cruz and Flores also testified that States never requested an attorney or stated that he wanted to remain silent and/or not speak to the officers. In fact, Officer Flores testified that States initiated conversations with the officers while he was in the backseat of the patrol car. Again, we find the testimony of the officers credible.

Once States arrived at the Area 2 police station, he was placed in a witness room by himself until approximately 1 p.m. on October 9, 2002. Once at the police station and while in the witness room, the government's witnesses testified that States was never questioned about the shooting or his involvement in the drug conspiracy giving rise to the issuance of the warrant for his arrest. The averments in States' suppression motion and his testimony at the hearing do not contradict this testimony and, therefore, we find that States was not questioned by police during that period of time. The government's witnesses also testified that while at the station, States never requested an attorney or expressed an intent to remain silent. States disagrees. Again, we find the testimony of the government's witnesses credible and find that States did not request an attorney or express an intent to remain silent while at the station.

---

identity and to administer the gunshot residue exam. Based on the evidence and our credibility determinations, we find Officer Cruz credible and States not credible.

At approximately 1 p.m. on October 9, 2002, Detective Johnson escorted States from the witness room to a conference room at the police station. Agent Hardgrave, Agent Schulte and Assistant States Attorney Tony Garcia were already in the conference room when Detective Johnson and States arrived. The individuals introduced themselves to States and then Agent Schulte read States his *Miranda* rights for the first time since he was taken into custody that day. Thereafter, Agent Schulte gave States the Interrogation - Advice of Rights form. States read the form and signed the Waiver section at 1:09 p.m. according to the time on the form.[5] (Government's Ex. 2) Thereafter, the law enforcement officers, for the first time, began interrogating States. As a result of the interrogation, States made incriminating statements which he now seeks to suppress.

**Conclusions of Law**

The only issue before this Court is the alleged violation of States' Fifth Amendment right to be free from compelled self-incrimination while subject to custodial interrogation.[6] The Fifth Amendment of the Constitution protects against compelled self-incrimination. In *Miranda v. Arizona*, the Supreme Court addressed the issue of compelled self-incrimination in the context of custodial interrogation, finding that "without

---

[5] These factual findings are consistent with the testimony of the government's witnesses and the averments in States' verified amended motion to suppress. However, at the hearing, States testified that while in the conference room, he was interrogated and made incriminating statements prior to being read his *Miranda* rights and subsequently waiving them. States' testimony contradicts his own verified motion to suppress and the credible testimony of the government's witnesses. Therefore, we find States' testimony on this issue not credible.

[6] In a March 13, 2004 opinion, Judge Guzman denied with prejudice States' motion to suppress his post-arrest statements based on an alleged violation of his Sixth Amendment rights. On May 18, 2004, Judge Guzman denied States' motion to reconsider his March 13, 2004 decision.

5

proper safeguards the process of in-custody interrogation . . . contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." 384 U.S. 436, 467 (1966). To combat the inherent pressures custodial interrogation presents, the *Miranda* Court established "a 'series of recommended 'procedural safeguards' . . . [that] were not themselves rights protected by the Constitution but were instead measures to insure that the right against compulsory self-incrimination was protected.' " *Davis v. United States*, 512 U.S. 452, 457 (1994) (quoting *Michigan v. Tucker*, 417 U.S. 433, 443-44 (1974)). Those procedural safeguards include "the now familiar *Miranda* warnings – namely, that the defendant be informed 'that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires'." *Rhode Island v. Innis*, 446 U.S. 291, 297 (1980) (quoting *Miranda*, 438 U.S. at 479). These rights are only necessary in the context of custodial interrogation. *Miranda*, 384 U.S. at 444.

Because a person's right to *Miranda* safeguards is limited to the context of custodial interrogation, the Supreme Court has repeatedly addressed what constitutes custodial interrogation, initially defining it as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* Later, the Supreme Court refined the definition stating that it "must reflect a measure of compulsion above and beyond that inherent in custody itself." *Innis*, 446 U.S. at 300-01. Ultimately, the Court found that interrogation under *Miranda* "refers not only to express questioning, but also to any words or actions

6

on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* "A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation." *Id.* at 301.

With a refined definition of interrogation in place, courts began to recognize situations in which *Miranda* protections do not apply. For example, a defendant is not entitled to *Miranda* protections when subject to "routine booking" questions because they are not designed to elicit incriminating responses. *Pennsylvania v. Muniz*, 496 U.S. 582, 600-601 (1990). Booking questions include inquiries regarding a defendant's "name, address, height, weight, eye color, date of birth, and current age." *Id.* at 600.

Additionally, because *Miranda* warnings are a prophylactic measure created by the Court to prevent the inherently compelling pressure created by custodial interrogation, they only attach in that context. *United States v. LaGrone*, 43 F.3d 332, 339 (7th Cir. 1994). A person cannot anticipatorily invoke his *Miranda* rights. *Id.* at 340. "[I]n order for a defendant to invoke his *Miranda* rights the authorities must be conducting interrogation, or interrogation must be imminent." *Id.* (*relying on McNeil v. Wisconsin*, 501 U.S. 171, 182 n.3 (1991) ("We have in fact never held that a person can invoke his *Miranda* rights anticipatorily, in a context other than 'custodial interrogation'.").[7]

---

[7]Although the facts of LaGrone dealt with the assertion of a defendant's right to counsel under *Miranda*, we find LaGrone's analysis applicable to all the safeguards articulated in *Miranda*, including the right to remain silent.

7

## States' Verified Motion to Suppress

Now that we have outlined the law applicable to States' motion to suppress, we analyze whether there are any facts to support his argument that his post-arrest statements were obtained in violation of his Fifth Amendment right. We find none.

The natural starting point in our analysis is a review of States' verified motion to suppress. In order to analyze whether the motion provides facts to support suppression, we briefly summarize its content. States' verified amended motion to suppress, as amended,[8] contains the following factual averments:

> "Around midnight on October 8/9, 2002, Charles States was watching a DVD in his apartment at 1248 E. 79th Street, Chicago, when he heard his front door being loudly battered or rammed several times. He ran to the front window and looked out, but he did not see any police vehicles parked outside. Fearing that gang members were invading his home, Mr. States retrieved a weapon and fired through the front door, whereupon numerous rounds of fire came from the other side of the door. At this point Mr. States heard shouts of "FBI," and he tried to open the door but he was unable to do so because the lock was jammed from being rammed. The police then kicked in the door. Mr. States was ordered to crawl on the floor to the front door, where he was handcuffed at gunpoint and kicked in the head because he had allegedly shot one of the arresting officers. While waiting to be driven to the Chicago Police Department station located at 727 East 111th Street, Mr. States said to a Chicago Police Department detective that he did not want to talk to him about his case. Mr. States does not know the identity of the Chicago Police Department detective, nor did he have access to a clock or watch so he does not know the exact time of his statement either. After his arrival at the station, while in the company of agents whose identity he does not know, Mr. States said that he wanted to talk to a lawyer. There was no clock in the area, so Mr. States does not know the exact time of his statement, but it was before he received any Miranda warnings. At approximately 1:00 p.m. on October 9, 2002, law enforcement agents initiated conversation with Mr. States. He was given the standard Miranda warnings and executed a waiver of his Miranda rights. The interrogation of Mr. States began

---

[8]States moved to orally amend his motion to suppress in court on the day of the hearing and his motion was granted. However, the amendments are not material to this opinion.

8

> about1:10 p.m. and did not conclude until 4:40. During the interrogation Mr. States made incriminating statements which the government is seeking to introduce into evidence against him."

In order for us to find a violation of States' rights under *Miranda*, we must first determine whether States was entitled to *Miranda* protections during the period of time at issue in the motion. To put it another way, we must decide whether States was subjected to custodial interrogation at any point between approximately 12:30 a.m. and 1:09 p.m. on October 9, 2002. If we answer the question in the negative, our analysis ends there. If States was not subjected to custodial interrogation, then he was never entitled to the safeguards articulated in *Miranda*. If States was not entitled to *Miranda* protections then law enforcement officers could not possibly have violated his right to those protections and his motion to suppress must be denied.

As stated above, custodial interrogation for *Miranda* purposes is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any way." *Miranda*, 384 U.S. at 444. It is uncontested that defendant was 'in custody' during the entire period of time at issue in this hearing. Therefore, our only inquiry is into whether States was 'interrogated' while in custody. Again, interrogation encompasses "not only express questioning, but also any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police." *Innis*, 446 U.S. at 301.

Based on the averments in defendant's motion to suppress, it is undisputed that the first prong of the definition of interrogation was not met. Defendant's motion does not state that he was ever subjected to direct questioning by law enforcement officers prior to being given the standard *Miranda* warnings and executing a waiver of his *Miranda* rights. See *Innis*, 446 U.S. at 302. The averments in defendant's motion also do not meet that second prong of the definition. Defendant's motion does not state that he was subjected to the "functional equivalent" of questioning.

After carefully reviewing States' motion, we cannot find any facts, disputed or otherwise, that could support a finding that States was subjected to custodial interrogation prior to approximately 1:10 p.m. on October 9, 2002, negating, it appears to us, the need for a hearing on the motion. Defendant's averments that "[w]hile waiting to be driven to the Chicago Police Department station . . . [he] said to a Chicago Police Department detective that he did not want to talk to him about his case" and that "[a]fter his arrival at the station, while in the company of agents whose identity he does not know, [he] said that he wanted to talk to a lawyer" are of no import. There are no averments that when States made these alleged statements he was subject to interrogation or that interrogation was imminent. Therefore, at best, these alleged statements were an anticipatory invocation of his *Miranda* rights which is prohibited under *LaGrone*, 43 F.3d at 339.

Additionally, the allegation that States was kicked in the head by Officer Graham and another unidentified officer, even if true, would not support a finding of custodial interrogation. That "fact" is more relevant to the issue of whether his post-arrest statements were voluntary, an issue defendant did not raise and we will not address.

10

However, for the sake of completeness, we note that the Seventh Circuit has already addressed this issue, finding that kicking a defendant in the head while he is being arrested does not make his confession involuntary. See Watson v. Detella, 122 F.3d 450, 454 (7th Cir. 1997) (Kicking someone while making an arrest is not official coercion. A confession after such conduct would not be involuntary because the defendant "was not kicked during some sort of interrogation or in an effort to force him to confess.").

*States' Hearing Testimony*

Both parties agreed to a hearing, which we conducted on June 3, 2004. Because a hearing was held and additional facts were presented, we now analyze those additional facts to determine whether they provide a basis for suppressing States' post-arrest statements. We find that they do not. In fact, even if we took virtually all[9] of States' hearing testimony as true, it would still fail to provide a basis for suppressing his post-arrest statements.

States only provided one additional set of "facts" at the hearing that require comment. On direct examination, States' testified that while in the backseat of the patrol car, he was questioned by law enforcement officers on two separate occasions. States elaborated, testifying that first he was questioned about his identity, and that later a law enforcement officer made substantive inquires about the shooting. As stated

---

[9]The only exception, as addressed above, is States' claim that he made the incriminating post-arrest statements at issue prior to receiving or waiving his *Miranda* rights. If that were true, it would support a motion to suppress. However, we found States testimony on that issue completely lacking in credibility.

11

above, we do not find States' testimony credible. However, even if true, these facts are not grounds to suppress his post-arrest statements.

The first series of questions were "routine booking" inquires and are not considered interrogation. Muniz, 496 U.S. at 600-601. As for the second series of questions, States failed to specify what questions the law enforcement officer posed. Because we do not know the content of the alleged questions, we cannot determine whether they were designed to elicit an incriminating response. States' testimony that he asked me "questions about the shooting" does not appear to us to be sufficient. However, for the purposes of argument, we will assume the second officer's questions constituted custodial interrogation and that in response to those questions States asserted his right to remain silent under Miranda. Those "facts" are not grounds to suppress his post-arrest statements.

The alleged custodial interrogation while States was in the backseat of the patrol car did not lead to the incriminating statements at issue. States did not make the incriminating statements he seeks to suppress until approximately twelve hours later. A defendant's valid invocation of his right to remain silent under Miranda does not preclude all subsequent custodial interrogation. Miranda provides that once a defendant indicates that he wishes to remain silent, the interrogation must cease. Miranda, 384 U.S. at 473-74. However, "[i]t does not state under what circumstances, if any, a resumption of questioning is permissible." Michigan v. Mosley, 423 U.S. 96, 101 (1975). In Mosley, the Supreme Court found that "the admissibility of statements obtained after the person in custody has decided to remain silent depends under Miranda on whether his 'right to cut off questioning' was 'scrupulously honored'." Id. at

104. A person's right to remain silent is scrupulously honored when "authorities ceased questioning him after he refused to make a statement, waited several hours before reinitiating questioning and resumed it only after again advising him of his Miranda rights." United States v. Wyatt, 179. F.3d 532, 538 (7th Cir. 1999).

Under Wyatt, even if States was subject to custodial interrogation in the backseat of the patrol car, and validly invoked his right to remain silent under Miranda, that right was scrupulously honored. States testified that after he allegedly invoked his right to remain silent, the interrogation ceased and did not resume until approximately twelve hours later, after States received Miranda warnings and waived them. States' allegation about the questioning in the backseat of the patrol car has no relevance to whether his post-arrest statements in the conference room should be suppressed.

That said, as stated above, we do not find a majority of States' testimony credible. Based on the all the evidence before us, both oral and written, we find that States was not subjected to custodial interrogation until after he was given and subsequently waived his Miranda rights. Therefore, his post-arrest statements were not elicited in violation of his Fifth Amendments rights under the Constitution and should not be suppressed.

**Conclusion**

This Court respectfully recommends that the District Court DENY defendant's motion to suppress. The statements defendant made on October 9, 2002 were obtained lawfully and should not be suppressed. Specific written objections to this report and recommendation may be served and filed within 10 business days from the date that this order is served. Failure to file objections with the District Court within the

specified time will result in a waiver of the right to appeal all findings, factual and legal, made by this Court in the report and recommendation. *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

ENTER:

_____
MICHAEL T. MASON
United States Magistrate Judge

Dated: June 14, 2004